IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAMES WILBUR FONDREN,              )
                                   )
            Petitioner,            )      Criminal Case No. 1:09CR263
V.                                 )      Civil Action No. 1:12CV1076
                                   )
UNITED STATES OF AMERICA,          )
                                   )
            Respondent.            )
_____)

## MEMORANDUM OPINION

This case is before the Court on the Petitioner James Wilbur Fondren's ("Petitioner") Motion To Vacate, Set Aside And/Or Correct His Sentence pursuant to 28 U.S.C. § 2255.

The Petitioner retired from active duty in the United States Air Force in May 1996 with the rank of Lieutenant Colonel.  In early 1998, the Petitioner sought to capitalize on his Department of Defense ("DoD") connections and established a consulting business, Strategy, Inc.  His only client was Tai Shen Kuo ("Kuo"), an entrepreneur the Petitioner first met while on active duty with the Pacific Command ("PACOM").  Upon his retirement from the Air Force, contacted Kuo about possible business opportunities. The Petitioner was aware that Kuo had close relationships with various officials from the Taiwan Ministry of

1

Defense and with government representatives in the People's
Republic of China ("PRC"), specifically Lin Hong.

Kuo met Lin in early 1990, and Hong began to slowly
cultivate Kuo as a source of information in the United States.
Hong was particularly interested in any contacts Kuo had within
the United States working in political or military positions.
When Petitioner contacted Kuo in connection with his fledgling
consulting business, Kuo introduced him to Lin.

Eventually, Lin tasked Kuo to get the Petitioner to write
opinion papers on various topics selected by Lin. The Petitioner
knew that Hong was well-connected to the Chinese government and
that his ideas would be passed along to the Military Committee,
the PRC equivalent to the Joint Chiefs of Staff.  Lin also
tasked Kuo with obtaining DoD documents from the Petitioner,
including sensitive draft publications not yet available to the
public.

The Petitioner provided Kuo with information and documents,
including sensitive information and drafts of government
documents.  Petitioner made it clear to Kuo that he expected to
be paid for his efforts, and Kuo paid him, depending upon the
sensitivity of the information or document the Petitioner
provided.

2

In August 2001, the Petitioner returned to government service and began working in a civilian capacity at the Pentagon as Deputy Director of PACOM's Washington Liaison Office.  At PACOM, the Petitioner held a Top Secret security clearance and had access to a classified computer network with classified documents from a variety of government agencies.

After returning to the Pentagon, the Petitioner no longer had direct contact with Lin, though he continued his consulting arrangement with Kuo, and Kuo continued to pay the Petitioner for his opinion papers.   The Petitioner required that he be paid in cash and did not report the income on his federal income tax returns.   In return, the opinion papers the Petitioner provided to Kuo contained sensitive information that Petitioner obtained through his DoD position and connections.

Acting at Lin's direction, Kuo mislead the Petitioner into believing that Kuo was now collecting DoD information at the direction of a Taiwanese general. Lin directed Kuo to task the Petitioner to write papers on specific military and political subjects and to obtain internal draft government documents. Kuo passed Petitioner's papers and documents along to Hong. Depending on the sensitivity of the information or document, Kuo paid the Petitioner $700 to $1,200 for an opinion paper and even more for a draft publication.

3

On August 10, 2007, FBI agents conducted a ruse interview of the Petitioner in an effort to evaluate the nature of his relationship with Kuo.   At the outset of the interview, the FBI advised the Petitioner that the nature of the interview was sensitive and confidential and that it was a national security matter.   He was asked not to discuss it outside of the room. However, two days after the FBI interview, the Petitioner sent Kuo an email in which he told Kuo of the visit by two FBI guys who said that they were from Counter Intelligence. During the interview, the Petitioner brought up Kuo's name and told the agents all about Kuo and his business contacts in Taiwan and China, but he never told them that he was writing papers for Kuo or that he was providing Kuo with DoD publications and documents.

The Petitioner's supply of documents and classified information continued after the FBI visits.   On September 22, 2007, Kuo asked Petitioner to write more papers, including one on bilateral meetings between PACOM and Chinese counterparts.   In response, the Petitioner accessed a classified PACOM report, dated October 19, 2007, and incorporated classified information into an opinion paper that he wrote and emailed to Kuo from his home on November 3, 2007.   In Petitioner's subsequent trial, Rear Admiral Michael S. Rogers, Director of Intelligence for the Joint Chiefs of Staff, testified that the information that

4

Petitioner copied from the PACOM report into his opinion paper was classified, and remained classified on November 3, 2007, when the Petitioner sent it to Kuo, because it went to the specifics in advance of a particular agenda.

The Petitioner continued to supply Kuo with sensitive and protected information after November 2007.  On February 11, 2008, FBI agents arrested Kuo at the Petitioner's residence, where Kuo was staying as a guest.  On the day of Kuo's arrest, FBI agents interviewed Petitioner at the Pentagon.  The Petitioner made a number of materially false statements pertaining to his involvement in providing Kuo with classified information. Petitioner falsely told the agents that everything he had written for Kuo in his opinion papers had been based on information from press and media reports and from his experience; the Petitioner also stated that he was sure that he had never included any classified information in any of the papers he had written for Kuo.  In addition, the Petitioner also falsely told the agents that he had not given Kuo a draft DoD document entitled "The National Military Strategy of the United States of America 2008, Version 5," which the FBI had earlier found in Kuo's possession when he was arrested in the Petitioner's house.

On August 27, 2009, a federal grand jury in Alexandria, Virginia, returned an eight-count Superseding Indictment charging

5

the Petitioner with Conspiracy To Act As An Unregistered Agent
Of A Foreign Government, (18 U.S.C. § 951) and To Commit Honest
Services Wire Fraud (18 U.S.C. §§ 1343 & 1346), in violation of
18 U.S.C. § 371 (Count 1); Aiding And Abetting An Agent Of A
Foreign Government, in violation of 18 U.S.C. §§ 2 and 951 (Count
2); Unlawful Communication Of Classified Information By A
Government Employee, in violation of 50 U.S.C.§ 783(a) (Counts 3
through 5); and False Statements to agents of the FBI, in
violation of 18 U.S.C. § 1001 (Counts 6 through 8).

On September 21, 2009, a jury trial commenced.  On September
25, 2009, the jury returned verdicts finding the Petitioner
guilty on Count 5 (Unlawful Communication Of Classified
Information By A Government Employee), as well as Counts 6 and 8
(False Statements).  The jury acquitted the Petitioner on Counts
3, 4, and 7, and this Court granted the Petitioner's Motion For
Judgment Of Acquittal with respect to Counts 1 and 2 of the
Superceding Indictment.

On January 22, 2010, this Court sentenced the Petitioner to
a term of thirty-six (36) months imprisonment on each of Counts
5, 6 and 8 to run concurrently and followed by two (2) years
term of supervised release.

The Petitioner appealed his conviction.  In an unpublished
opinion, the Fourth Circuit upheld Petitioner's convictions,

noting that "the evidence is abundant that Fondren was aware that he was passing classified information to an agent or representative of a foreign government." United States v. Fondren, No. 09-5136, 2011 WL 933700, *15 (4th Cir. March 18, 2011). On August 15, 2011, the Petitioner filed a Petition For Writ Of Certiorari, which was denied on October 3, 2011. On September 24, 2012, the Petitioner filed this Section 2255 Motion.

A prisoner in federal custody who has exhausted his direct appeal may attack his sentence only on four limited grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Petitioners are typically barred from litigating non-constitutional claims that were not raised on direct appeals, United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010), and from re-litigating claims the merits of which were raised and decided on direct appeal. United States v. Linder, 561 F.3d 339, 343 (4th Cir. 2009) (Motz, J., dissenting); see also United States v. Molen, 43 F.3d 1469 (4th Cir. 1994).

7

The Petitioner bears the burden of proof on all of these claims by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Any claim of actual innocence must be proven by clear and convincing evidence. United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). The scope of review for non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involved "a fundamental defect which inherently results in a complete miscarriage of justice," or is "inconsistent with the rudimentary demands for fair procedure." Mikalajunas, 186 F.3d at 495-96.

The Petitioner alleges that this Court committed error by failing to instruct the jury that public information could not be classified. In addition, he claims that he is actually innocent of Count 5 because the information he communicated, according to him, was publicly available.

The Petitioner did not offer a contemporaneous objection to the Court's jury instructions regarding 50 U.S.C. § 783(a) or classification of documents, nor did he appeal the issue of the jury instruction before the Fourth Circuit. In United States v. Frady, the Supreme Court concluded that "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1)

8

'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." 456 U.S. 152, 167 (1982). Similarly, to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, "the movant must show cause and prejudice resulting from the errors . . . or he must demonstrate that a miscarriage of justice would result from refusal of the court to entertain the collateral attack." Mikalajunas, 186 F.3d at 493; see also Frady, 456 U.S. 167-68. The existence of cause for a procedural default "must turn on something external, such as the novelty of the claim or the denial of effective assistance of counsel." Mikalajunas, 186 F.3d at 493.

To excuse his default, Petitioner alleges that he is "actually innocent" of Count 5. To succeed on actual innocence grounds, however, "a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." United States v. Pettiford, 612 F.3d 270, 282 (4th Cir. 2010) (internal quotation marks omitted); see also Bousley v. United States, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means

9

factual innocence, not mere legal insufficiency."). Moreover, the "movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493.

In his § 2255 Motion, Petitioner offers no new evidence suggesting that he is factually innocent of the allegation in Count 5. Instead, he attacks the evidence adduced at trial regarding the classification of the documents, a question of legal sufficiency, not actual innocence. The Petitioner also attacks the propriety of the classification, but, as explained below and previously decided by this Court, this is not a relevant inquiry for purposes of 50 U.S.C. § 783(a). As such, the Petitioner's claims of actual innocence are unsubstantiated and do not excuse his procedural default.

The Petitioner did not object to the instructions given by this Court. Because he failed to object, his claim is reviewed only for plain error. United States v. Hastings, 134 F.3d 235, 239 (4th Cir. 1998); see also United States v. Gragg, 294 F. App'x 789, 790 (4th Cir. 2008) (unpublished). Plain error review requires the defendant to establish that: (1) there was error; (2) the error was "plain;" and (3) the error affected the defendant's substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993). The term "plain" is "synonymous with 'clear' or, equivalently, 'obvious.'" Id. at 734.

10

At the close of evidence, the Government submitted a jury instruction to account for the fact that it is not for the jury to determine whether the source documents were classified, but just whether information from the source documents was taken and incorporated into the Petitioner's papers. This Court denied that request and instead instructed the jury on the four elements of 50 U.S.C. § 783(a), specifically that: 1) the defendant was an officer or employee of the United States or some department or agency thereof; 2) that the defendant knowingly communicated information of a kind classified by the President or by the head of a department or agency with the approval of the President as affecting the security of the United States; 3) that the person to whom the information was communicated must have been a person that the defendant knew or had reason to believe was an agent or representative of a foreign government; and 4) that the defendant knew or had reason to know that the information communicated had been classified as affecting the security of the United States. This Court also noted the three levels of classified information (Top Secret, Secret, and Classified) that may not be disclosed to a person who is not eligible to receive classified information. This instruction, which clearly and correctly states the elements of 50 U.S.C. § 783(a), was accurate and robust, and the Petitioner does not point to any other instruction that would

11

have been obviously necessary for the jury. There was no plain error.

The Petitioner does not contest that he copied the classified PACOM report or that he incorporated those excerpts into his report while knowing the report to be classified. Instead, he argues that the incorporated classified excerpts were improperly classified, claiming that the copied passages were well-known publicly or that news articles also indicated the same information. Though Petitioner focuses on the jury instructions in his current appeal, his real objection is to this Court's pretrial Order, on the Government's Petition, that precluded the presentation of evidence, direct or cross-examination, argument or comment at trial or before the jury concerning the propriety of the Government classification of the original source documents, including the PACOM report alleged in Count 5.

As discussed during the pretrial proceedings of this case, the Petitioner simply cannot defend himself from charges of illegally transmitting a classified report by arguing that the information should not have been classified. When proving the unlawful passage of classified materials, "[t]he fact of classification of a document or documents is enough to satisfy the classification element of the offense." United States v. Boyce, 594 F.2d 1246, 1251 (9th Cir. 1979) (interpreting similar

12

language in 50 U.S.C. § 798).  The plain language of the statute only requires that the information shall have been classified by the appropriate individual on the grounds of national security. If that information is communicated in any manner or by any means, to any other person whom such officer or employee knows or has reason to believe to be an agent or representative of any foreign government, while the defendant knows the information remains classified, section 783(a) is violated.

Other courts have rejected improper classification as a defense to 50 U.S.C. § 783(a).  In Scarbeck v. United States, a defendant was convicted under 50 U.S.C. § 783(a) of providing classified reports to foreign agents without appropriate approval.  317 F.2d 546 (D.C. Cir. 1962).  On appeal, the defendant argued that the government was required to prove at the trial that the documents involved were properly classified. The D.C. Circuit, however, correctly noted that "[t]here is no suggestion in the language of [now Section 83(a)] . . . that the information must properly have been classified." Id. at 558. The Scarbeck court explained that "the inclusion of the requirement for scienter on the part of the employee is a clear indication of the congressional intent to make the superior's classification binding on the employee, once he knows of it." Id. at 558-59.

13

The Scarbeck court further explained the role of the court and jury in a case alleging a violation of 50 U.S.C. § 783(a): "the function of the court was to instruct as to the meaning of 'classified' information, the disclosure of which would be violative of [section 783(a)], and the function of the jury was to decide whether the information revealed was classified information in that sense." Id. at 559. In rejecting the defendant's claim that he was entitled to a jury instruction establishing correct classification as an element of section 783(a), as the Petitioner claims now, the Scarbeck court explained the consequences of such an interpretation:

> [A]ppellant is urging that after such an employee has obtained and delivered a classified document to an agent of a foreign power, knowing the document to be classified, he can present proof that his superior officer had no justification for classifying the document, and can obtain an instruction from the court to the jury that one of their duties is to determine whether the document, admittedly classified, was of such a nature that the superior was justified in classifying it. The trial of the employee would be converted into a trial of the superior. The Government might well be compelled either to withdraw the prosecution or to reveal policies and information going far beyond the scope of the classified documents transferred by the employee. The embarrassments and hazards of such a proceeding could soon render [Section 783(a)] an entirely useless statute.

14

Id. at 560.  The Scarbeck Opinion contains a careful examination of the text, history, and purpose of section 783(a).  Indeed, the Fourth Circuit has approvingly noted and relied on the Scarbeck analysis in dealing with another section 783(a) case. See United States v. Truong Dinh Hung, 629 F.2d 908, 920 (4th Cir. 1980).

Moreover, in this case, the Petitioner has not established the public availability of all the information he illegally transmitted from the PACOM report at the time he actually transmitted the information.  The Petitioner's own expert, Admiral Eric McVadon, acknowledged on cross- examination that he had not sourced all of the information within Petitioner's opinion paper to publicly available documents.   Admiral McVadon also did not know of any report that identified the port visit reported in the PACOM End of Day Update and copied into the Petitioner's opinion paper.   Similarly, and as noted repeatedly at trial, many of the public media accounts to which Petitioner cites were published or distributed after Petitioner transmitted his own report to Kuo.  As a factual matter, citing to public accounts published after Petitioner's transmission does not establish that the informational was publicly available at the

15

time Petitioner gave Kuo classified information from the PACOM
reports.  In short, the Petitioner has not established the
public availability of all the information he transmitted, and
therefore he is not actually innocent even according to his own
theory of the scope of 50 U.S.C.§ 783(a).

At trial, the fact of classification was established by the
testimony of Admiral Rogers, who identified and explained the
classification of the portion of the PACOM report copied by the
Petitioner.  Admiral Rogers explained, for example, that parts
of the report were classified because it went to the specifics
in advance of a particular agenda.  Section 783(a) bars the
Petitioner from arguing the merits of this classification, and
this Court limited him from doing so at trial.

The Petitioner's second set of claims alleges that he
received constitutionally ineffective assistance of counsel.
First, the Petitioner argues that trial counsel provided
constitutionally deficient assistance by ignoring the essential
question of whether information could be classified.  Second, the
Petitioner argues that trial counsel was ineffective for failing
to adequately challenge Admiral Rogers authority to certify the
3November 2007 [PACOM] paper as classified.  Third, the
Petitioner argues that appellate counsel was ineffective for
failing to present the stronger issue that the public nature of

16

the so-called classified information precluded it from being
deemed classified.

Claims of ineffective assistance of counsel are evaluated by
the rigorous two-pronged test established by the Supreme Court in
Strickland v. Washington.  466 U.S. 668, 687-88 (1984).  To meet
this standard, a defendant must demonstrate that, in light of all
the circumstances as they appeared at the time of the conduct,
counsel's representations fell below an objective standard of
reasonableness and that that there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. Id. at 687-88,694.
"Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness
claim." Id. at 700.

Even the Petitioner admits that his trial counsel mounted a
vigorous defense on his behalf.   The defense team presented a
multi-pronged defense; their arguments included (a) that the
information passed by the Petitioner to  Kuo was unclassified and
(b) that Petitioner lacked the mens rea necessary under 50
U.S.C. § 783(a). The Petitioner argues that both trial and
appellate counsel were too preoccupied with the latter theory.
However, such alleged preoccupation does not amount to
constitutionally deficient performance.

17

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689-90; United States v. Terry, 366 F.3d 312, 316-18 (4th Cir. 2004), cert. denied, 543 U.S. 983 (2004); Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997). Tactical decisions—like the question of how much emphasis to place on different legal arguments—are viewed by a reviewing court with particular deference. Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) ("A criminal defense attorney routinely faces thorny tactical decisions that may heavily bear on the defendant's life or liberty."). The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 691. In this case, counsel's choice was clearly both strategic and effective, since the Petitioner was acquitted of multiple counts charged in the Indictment.

Moreover, counsel was appropriately barred by judicial order from challenging the merits of the PACOM update's classification. Prior to trial, counsel opposed the United States' Motion In Limine concerning challenges to the official classification of the documents the Petitioner was alleged to have transmitted. This Court's Order of September 8, 2009, however, precluded the Petitioner from challenging the propriety

18

of the classification of the original source documents.
Nevertheless, trial counsel elicited testimony during the cross-examination of Admiral Rogers and the direct examination of Admiral McVadon that some public media reports discussed facets of Sino-U.S. relations covered in the PACOM report.  As a factual matter, therefore, counsel did not miss any essential issue pertaining to the public availability of certain information, as the Petitioner now claims.

Finally, the Petitioner's ineffective-assistance argument relies on the same incorrect and misapplied analysis of whether the public availability of certain facts can be a defense under 50 U.S.C. § 783(a).  As detailed above, the public availability of any information found within the classified report is irrelevant for purposes of section 783(a) if the classified information itself is distributed.  In order to prove the offense charged under 50 U.S.C. § 783(a), the Government must show that "the defendant knew or had reason to believe that the person to whom he gave classified information was either a representative of a foreign government… and that the defendant knew or had reason to know that the information was classified." United States v. Miller, 824 F. 2d 1255, 1278 n.12 (9th Cir. 1989). When proving the unlawful passage of classified materials, the fact of classification of a document or documents is enough to

19

satisfy the classification element of the offense.

The Petitioner also argues that movant gave trial counsel the information needed to challenge Admiral Rogers' authority to certify the 3 November 2007 paper as classified, but they failed and refused to use it.  Again, the Petitioner attacks a strategic decision by his counsel, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90.

The Petitioner can hardly claim that Admiral Rogers was not qualified to determine the classifications of the PACOM documents.  Admiral Rogers's position at that time served as the Director of Intelligence for the Joint Chiefs of Staff.  As part of his duties in that position, he had original classification authority to classify information and documents that are generated by the Joint Staff.

The Petitioner again claims that counsel was ineffective for failing to properly establish the public nature of the information contained within the PACOM report and copied into Petitioner's opinion paper.  This claim is belied by the Petitioner's own acknowledgement that trial counsel did elicit admissions from Admiral Rogers as to the public nature of the information contained within parts of the opinion paper.  At trial, counsel

offered a variety of public media to establish that certain facts
may have been in open-source outlets.

To the extent that the Petitioner now cites to other public
documents that he wishes had been presented at trial, this
evidence is simply cumulative and not indicative of
constitutionally insufficient assistance of counsel.  "Obviously,
a petitioner cannot satisfy the prejudice prong of the
Strickland test with evidence that is merely cumulative of
evidence already presented at trial." Rose v. McNeil, 634 F.3d
1224, 1243 (11th Cir. 2011); see also Pruett v. Thompson, 996
F.2d 1560, 1577 n.17 (4th Cir. 1993) (dismissing § 2255 request
for hearing in part because petitioner had "not stated what non-
cumulative evidence he would or could put on, if granted another
hearing on his ineffective assistance"). In this particular
case, these other public documents are at best cumulative and at
worst irrelevant; counsel was not deficient for failing to
present any of this information.

Finally, the Petitioner argues that appellate counsel
failed to sufficiently challenge the merits of the classified
report and the existence of public-source information that
discussed similar topics to the PACOM report.  As Petitioner
notes, however, his counsel did in fact present this issue on
appeal. On appeal to the Fourth Circuit, the defendant concluded

21

the decision of Scarbeck v. United States (discussed above in
this response) bound the Fourth Circuit; rather than arguing
Scarbeck was incorrect or distinguishable, the Petitioner
instead reserved the right to request that these cases be
overruled by this Court *en banc* or by the Supreme Court and to
challenge his conviction on that basis.    In his Writ to the
Supreme Court, appellate counsel argued that much of the PACOM
report contained information that was improperly classified and
that, contrary to Scarbeck,  the Petitioner was not guilty of
violating 50 U.S.C. § 783(a).  Pet. for Writ of Certiorari,
Fondren v. United States, 132 S. Ct. 256 (2011), at 18-25.  Even
if the Petitioner believes the subject was not raised with enough
vigor, he cannot claim that his counsel was constitutionally
insufficient in this respect.

   Moreover, the Petitioner cannot show any prejudice from the
conduct of appellate counsel because, as explained above,
Scarbeck correctly interprets section 783(a), and the
availability of public information is irrelevant to the charge in
Count 5. The evidence adduced at trial established both the
classification of the document and Petitioner's knowledge of such
classification; Petitioner was thereby bound by his superior's
classification and cannot challenge his conviction under 50
U.S.C. § 783(a) by litigating the merits of such classification.

22

Boyce, 594 F.2d at 1251; Scarbeck, 317 F.2d at 558-59.  All of Petitioner's claims of ineffective assistance of counsel are without merit.

The Petitioner was convicted of Count 6 for lying to FBI agents about his communication of classified documents to Kuo. Petitioner claims that he is not guilty of these charges because the classification of the PACOM report was improper.  The Petitioner relies entirely on his analysis as to Count 5, and since his analysis of his conviction under Count 5 is incorrect, his analysis as to Count 6 is similarly in error.

Moreover, the Petitioner ignores that Count 6 does not require Count 5 as a predicate offense. Section 1001 "proscribes false statements *qua* statements" and does not require the statements relate to any other illegal conduct.  United States v. Allen, 13 F.3d 105, 109 (4th Cir. 1993). Here, Petitioner made false statements about the source of the information that he provided to Kuo in his opinion papers.  As the Fourth Circuit explained during Petitioner's direct appeal:

> On the same day Kuo was arrested, Fondren was interviewed by FBI agents at his workplace in the Pentagon.  Fondren made a number of false statements pertaining to his involvement in providing Kuo with classified information.  Fondren falsely told the agents that everything he had written for Kuo in his opinion papers had been based on information from press and

> media reports and from his experience and
> that he was sure he had never included
> any classified information in any of the
> papers he had written for Kuo.  This was
> the charge in Count 6.

Fondren, 417 F. App'x at 330 (internal citations omitted).  Even

if the materials had not been classified, the Petitiner still

misrepresented the source of his materials which constitutes a

material misrepresentation by hiding the fact he was leaking

information from government to an agent of a foreign power.

Thus,  the Petitioner cannot show either prejudice from

ineffective assistance of counsel or actual innocence.

Finally, Petitioner claims that trial counsel was

constitutionally ineffective for keeping Petitioner's alleged

Alzheimer's diagnosis from the Court and the jury as a defense to

Count 8.   Petitioner also argues that his diagnosis should have

been presented as a mitigating factor during sentencing.

The Petitioner's claim is not that his counsel failed to

investigate his mental condition. Compare, e.g., Gray v. Branker,

529 F.3d 220, 229 (4th Cir. 2008) (finding ineffective counsel

where counsel failed to investigate defendant's mental state

despite signs of "mental and emotional instability").  As

described in his own petition, the Petitioner was referred in

October 2008, a year prior to trial, for a medical examination

for memory concerns.  His own petition indicates that his counsel

was aware of this assessment before trial but chose not to present it.  Therefore, the decision not to present the Petitioner's medical condition was a strategic one made by counsel, which is entitled to great deference.  Strickland, 466 U.S. at 691; Tice, 647 F.3d at 102.

In this case, the strategic decision was obviously sound. In support of this claim, Petitioner now presents Exhibit 7, a Chronological Record of Medical Care dated October 29, 2008 and authored by Major Robert Parish, Ph.D. and Mark Kelly, Ph.D. Petitioner relies on Exhibit 7 to support his claim that at the time of the criminal activity delineated in Count 8, he exhibited symptoms of Alzheimer's disease and was placed on medication for Alzheimer's.  Though Petitioner suggests that Exhibit 7 contains a diagnosis that supports his claim of diminished mental capacity, it in fact says the opposite.  Exhibit 7 clearly states that though the patient's cognitive profile is not normal, it does not fit a pattern characteristic of Alzheimer's disease or any other common neurodegenerative disorder.  The report also concludes that Petitioner does not appear, however, to represent significantly impaired attention or memory.  Additionally, Exhibit 7 does not reference any prescription for Alzheimer's medication.  Exhibit 7 simply does not support the Petitioner 's claimed illness.  Rather, it shows that Petitioner was not

suffering from Alzheimer's eight months after he made material misstatements to the FBI, and it certainly demonstrates that Petitioner was not suffering from Alzheimer's when he made the material misstatements.

Petitioner explains that he informed trial counsel of the diagnosis and medication, and counsel would not raise this issue at trial, and would not inform the court of the diagnosis and treatment, because in their non-medical inexpert opinion, it was not significantly different from other people movant's age. Here, counsel understandably made a strategic decision not to introduce as a defense unsupported allegations of mental incompetency either at trial or at the time of the crime. As such, the Petitioner has not met his burden of proof, and this claim should be denied.

For the foregoing reasons, the Petitioner's Motion To Vacate, Set Aside, Or Correct His Sentence should be denied.

An appropriate Order shall issue.


_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE


Alexandria, Virginia
October 24 , 2014


26